## ARCHIBALD C. PARKS

### V.

## THEOPHILE LAROCHE.

1. CONTRACT FOR A GOOD TITLE—WHAT PARTY MAY BE COMPELLED TO ACCEPT.—Where a party does not contract for a title of record but simply for a good title, he may be compelled to accept one not of record if such title is good to a moral certainty, which is tantamount to being free from reasonable doubt.

2. TITLE BY LIMITATION.—A title by limitation is capable of meeting the above requirement, for though such title may be, in general, "doubtful and uncertain," even in a high degree, yet in a given case, where the prior record title is shown to have been in one against whom the statute under which adverse possession becomes available has run, it is in law and fact as firm as a deed can make it. The court is of opinion that the title by limitation in this case is good to a moral certainty, and that appellee must perform his contract.

3. LAPSE OF TIME.—The lapse of nine years between the date of a judgment and the sale on execution upon such judgment, will not impeach it.

4. TIME, HOW COMPUTED.—In a bill for specific performance by the vendor where the title is one by limitation, the time should be computed from the time the statute begins to run to the date of the decree.

APPEAL from the Circuit Court of Iroquois county; the Hon.. FRANKLIN BLADES, Judge, presiding. Opinion filed August 20, 1884.

Messrs. KAY & EUANS, for appellant; that a moral certainty that the title is good is all that is required if it is not possible in the nature of things that there should be a mathematical certainty of a good title, cited Lyddal v. Weston, 2 Atk. 20; Strober v. Dutton, 6 Phil. (Pa.) 185; Dobbs v. Norcross, 24 N. J. Eq. 327.

As to the distinction between a good title of record and a good title: Page v. Greeley, 75 Ill. 400.

The vendor is entitled to the benefit of all the time, from the time the statute begins to run to the date of the decree: Hepburn v. Auld, 5 Cranch, 262; Hepburn v. Dunlop, 1 Wheat. 231; Seymour v. Delaney, 3 Cowen, 445; Langford v. Pitt, 2 P. Wms. 629.

Messrs. DOYLE, MORRIS & PIERSON, for appellee; that a purchaser who has bargained for a good title shall not be compelled to take one which is subject to suspicion, cited Brown v. Cannon, 5 Gilm. 182; Morgan v. Smith, 11 Ill. 199; Kimball v. Tooke, 70 Ill. 560; Snyder v. Spaulding, 57 Ill. 480; Bishop v. Newton, 20 Ill. 179.

PLEASANTS, P. J. In January, 1876, Jesse H. Thompson gave to appellee a bond to convey lots 4 and 8 in block 12 of the town of Milford, " by good and sufficient deed   *   *   *   clear of all incumbrances whatever," upon his payment of two small notes at maturity, with interest according to their tenor, and all the taxes in the meantime to be levied on said premises. Appellee went into possession under this contract, made some improvements, paid the note first maturing and a small amount

on the other, which was for $200 and due January 1, 1878. In January, 1879, Thompson tendered him a proper deed and presented the note, but he refused to accept or pay. In July, 1880, Thompson assigned the note and conveyed the lots by warranty deed to appellant, who on the 23d of October following tendered a like deed of himself and wife to appellee, together with the deed from Thompson, and demanded payment; and appellee again refusing, on the same day filed the bill herein, praying that he be required to pay the amount remaining due on said note by a short day, or in default thereof that his interest in the premises be sold under the direction of the court to pay the same.

The defense set up was that the title was not clear and such as was required by the bond; which the circuit court sustained upon the proofs, and made a decree dismissing the bill.

It appears that by a patent from the government to William Pickerel, issued October 10, 1883, and conveyances following, the title to these lots became vested in 1838 in Jacob Wagner; that on November 13, 1855, they were sold on execution upon a judgment against him, of June 4, 1846, in favor of the administrator of the estate of said patentee, and that on February 13, 1856, upon said sale, a deed was made to George B. Joiner, the purchaser, who with his wife executed a deed of February 11, 1856, purporting to convey them to James Loveless and David McDonald; that McDonald and wife executed a warranty deed, of March 17, 1858, of the entire interest, to Daniel Pruitt; and that from him, through seven mesne conveyances, successively and regularly executed, and each with full covenants of warranty, this interest was in terms passed to said Jesse H. Thompson on the 23d of November, 1874.

The plat of the town of Milford, made for and acknowledged by said patentee, was filed for record October 10, 1836. Lots 4 and 8 compose the south tier in block 12, extending across it east and west, from street to street. From the earliest recollection of witnesses, going back to a time anterior to the sheriff's sale to Joiner, they have been inclosed together, improved by a dwelling house, stable and garden thereon, and occupied continuously until now—during the last eight years by appel-

lee, who is still in possession. McDonald occupied them in 1856 and exclusively until he conveyed to Pruitt. It does not appear that the latter, who conveyed in December, 1859, ever occupied them in person; but it is shown that his grantee did, as did also three of the other five successive deed holders intervening between him and Thompson, and that at different times not fixed by the proof they were occupied by renters.

James Loveless was of age when McDonald conveyed. He lived near Milford for some years, and then moved back to Indiana, where he died in the summer of 1876, leaving a widow and minor children.

Since appellee did not contract for a title of record, he may be required to accept one not of record, if "good" enough. Page v. Greeley, 75 Ill. 400. How good that must be can hardly be stated more favorably to the purchaser than was done in Brown v. Cannon, 5 Gilm. 180–4, where the principal authorities on that side are referred to and the rule announced that it must be free from reasonable doubt. A title by limitation, however, is there recognized as capable of meeting this requirement; for though such may be in general "doubtful and uncertain," even in a high degree, yet in a given case, where the prior record title is shown to have been in one against whom the statute under which adverse possession becomes available has run, it is in law and fact as firm as a deed could make it. Seymour v. DeLancey, Hopkins' Ch. R. (N. Y.) 436; Strober v. Dutton, 6 Phila. (Pa.) 185. A title that is good to a moral certainty—which is tantamount to being free from any reasonable doubt—is all that can in such case be required. In Lyddall v. Weston, 2 Atk. 20, Lord Ch. Hardwicke said: "This is one of the cases of willingness and unwillingness in a purchaser. It is the business of this court to carry such agreements into execution, and it must govern itself by a moral certainty, for it is impossible in the nature of things there should be a mathematical certainty of a good title. * * * There are often suggestions of old entails, and often doubts what issue persons have left, whether more or fewer, and yet these were never allowed to be objections of that force as to overturn a title to an estate."

Are not those that are suggested against the title of appellant here of just this character? It is not contended that anybody can by any legal possibility successfully oppose it, unless it may be some one claiming under Jacob Wagner or James Lovelass. No doubt that Wagner, on the 13th of November, 1855, had a perfect record title to both these lots, is intimated. It may be that at the time of his death he was in possession of them; but he was not then seized. His title had been divested, subject only to the right of redemption, by judicial sale on that day. One witness testified that according to his recollection the possession of McDonald, in 1856, immediately succeeded that of the family of Wagner, whose widow continued to live on the premises " quite a little time after his death," the date of which is not shown; and he is not contradicted as to the fact by any other. Upon this statement it is said that the sheriff's sale may have been made after his death—a possibility, indeed, but the evidence referred to has no tendency to prove it as a fact, and it is too improbable to be the basis of a reasonable doubt. Every presumption is in favor of the regularity of the sheriff's proceedings on the sale, and the inference to be unhesitatingly drawn is that the widow, having no prospect of redeeming, yielded possession to the grantee of the purchaser as soon as she could make other arrangements for a residence, without contest or protest. The judgment, being in favor of the patentee, was not improbably for the purchase money, so that she had no claim of dower. The lapse of so many years between the date of the judgment and the sale will not impeach it. Lampsett v. Whitney, 2 Scam. 441. The heirs of Wagner, then— and who they were, and whether lineal or collateral, does not appear—having never redeemed nor offered to redeem, were never seized. McDonald being in possession, and claiming title under proceedings that divested their ancestor, and they having no intervening title, the statute began to run as against the ancestor. It appears from the record that the sheriff's deed to the purchaser was dated the 13th of February, 1856, from which arises the suspicion of a mistake therein of 1856 for 1857, as might easily occur so near the beginning of the

new year, which would make it just fifteen months after the sale and strictly in conformity with the direction of the statute. But if not, no one having a right has complained that it was executed prematurely, and there being no pretense of a redemption or of an offer to redeem, by anybody, the possession by McDonald under that deed, based on a sale that divested Wagner, would be directly adverse to his title and not to that of his heirs. They are therefore barred, as he would be, if living, even though the sheriff's deed had been void. But it is not claimed that it was void. The doubt insisted on is rather based upon the title of James Lovelass, as possibly outstanding in his heirs. Nor is it denied that the deed of the entire premises by McDonald, his co-tenant, in March, 1858, and the possession following, was a disseisin of Lovelass. Goewey v. Urig, 18 Ill. 242; Lavalle v. Strobel, 89 Id. 384–5. So that the statute would begin to run against him from that time, and would have barred his heirs also when this bill was filed if the adverse possession had been continuous, notwithstanding his death in 1876, because it contained no clause or qualification saving their rights. The People v. White, 11 Ill. 350, and cases there cited; Peoria County v. Gordon, 82 Id. 435. But it is claimed that the evidence does not show such continuous adverse possession beyond a reasonable doubt. We think differently, from the facts above stated, and which are not contradicted. The lots were inclosed and built upon for residence in Wagner's time. Several witnesses so testify, and that they have been actually occupied " continuously " ever since. Nearly all of the deed holders are shown to have lived on them during the period of their respective claims under their deeds; and at different times not definitely fixed, but which must have been intervals between such possessions, it was occupied by tenants who rented. The time should be computed from the date of the disseisin to that of the decree, which was twenty-six years. Hepburn v. Auld, 5 Cranch, 277; Hepburn and Dundas v. Dunlap and Co., 1 Wheat. 179. .

We therefore regard the title of appellant as free from reasonable doubt—good, to a moral certainty. He was conse-

quently entitled to the relief asked, and it was error to deny it. The decree is reversed and the cause remanded for further proceedings in conformity herewith.

Reversed and remanded.